# Matter of SKIRBALL CULTURAL CENTER

*Decided May 15, 2012*[1]

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Administrative Appeals Office

(1)   Congress did not define the term "culturally unique," as used in section 101(a)(15)(P)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(P)(iii) (2006), leaving reasonable construction of that term to the expertise of the agency charged with adjudicating P-3 nonimmigrant visa petitions.

(2)   The term "culturally unique," as defined at 8 C.F.R. § 214.2(p)(3) (2012), is not limited to traditional art forms, but may include artistic expression that is deemed to be a hybrid or fusion of more than one culture or region.

(3)   As the regulatory definition provides for the cultural expression of a particular "group of persons," the definition may apply to beneficiaries whose unique artistic expression crosses regional, ethnic, or other boundaries.

(4)   The regulatory definition of "culturally unique" calls for a case-by-case factual determination.

(5)   The petitioner bears the burden of establishing by a preponderance of the evidence that the beneficiaries' artistic expression, while drawing from diverse influences, is unique to an identifiable group of persons with a distinct culture; it is the weight and quality of evidence that establishes whether or not the artistic expression is "culturally unique."

FOR PETITIONER:  Pro se

BEFORE:  Perry Rhew, Chief, Administrative Appeals Office

The Director, California Service Center, recommended that the nonimmigrant visa petition be denied and certified her decision to the

---

[1] This decision was originally entered on December 19, 2009. The matter has been reopened on U.S. Citizenship and Immigration Services' own motion for the limited purpose of making editorial revisions consistent with the designation of this decision as precedent.

Administrative Appeals Office ("AAO") for review. The AAO will withdraw the director's decision and approve the petition.

The petitioner, a museum and cultural center, filed the nonimmigrant petition seeking classification of the beneficiaries under section 101(a)(15)(P)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(P)(iii) (2006), as entertainers in a culturally unique program. The beneficiaries are musicians comprising the group known as Orquesta Kef. The petitioner seeks classification of the beneficiaries as P-3 entertainers for a period of approximately 6 weeks.

On November 10, 2009, the director recommended denial of the petition, concluding that the petitioner failed to establish that the performance of the beneficiaries is culturally unique. Specifically, the director found that the petitioner failed to meet the evidentiary requirements set forth in the regulations.

Because the petition involves an unusually complex or novel issue, the director certified her decision to the AAO and advised the petitioner that it had 30 days in which to submit a brief or other written statement to the AAO. *See* 8 C.F.R. § 103.4(a) (2012). The petitioner did not submit a brief and the record is considered complete.

## I. THE LAW

Section 101(a)(15)(P)(iii) of the Act provides for classification of an alien having a foreign residence that the alien has no intention of abandoning who:

> (I) performs as an artist or entertainer, individually or as part of a group, or is an integral part of the performance of such a group, and
>
> (II) seeks to enter the United States temporarily and solely to perform, teach or coach as such an artist or entertainer or with such a group under a commercial or noncommercial program that is culturally unique . . . .

Congress did not define the term "culturally unique," leaving construction of that term to the expertise of the agency charged with adjudicating P-3 nonimmigrant visa petitions. By regulation, the Immigration and Naturalization Service (now U.S. Citizenship and Immigration Services ("USCIS")), defined the term at 8 C.F.R. § 214.2(p)(3) (2012): "Culturally unique means a style of artistic expression, methodology, or medium which is unique to a particular country, nation, society, class, ethnicity, religion, tribe, or other group of persons."

The regulation at 8 C.F.R. § 214.2(p)(6)(i) further provides:

> (A)  A P-3 classification may be accorded to artists or entertainers, individually or as a group, coming to the United States for the purpose of developing, interpreting, representing, coaching, or teaching a unique or traditional ethnic, folk, cultural, musical, theatrical, or artistic performance or presentation.
> (B)  The artist or entertainer must be coming to the United States to participate in a cultural event or events which will further the understanding or development of his or her art form.  The program may be of a commercial or noncommercial nature.

Finally, the regulation at 8 C.F.R. § 214.2(p)(6)(ii) states that a petition for P-3 classification shall be accompanied by:

> (A)  Affidavits, testimonials, or letters from recognized experts attesting to the authenticity of the alien's or group's skills in performing, presenting, coaching, or teaching the unique or traditional art form and giving the credentials of the expert, including the basis of his or her knowledge of the alien's or group's skill, or
> (B)  Documentation that the performance of the alien or group is culturally unique, as evidenced by reviews in newspapers, journals, or other published materials; and
> (C)  Evidence that all of the performances or presentations will be culturally unique events.

The record of proceeding includes the Petition for a Nonimmigrant Worker (Form I-129) and supporting documentation, a request for additional evidence ("RFE") dated October 19, 2009, the petitioner's response to the RFE, and the director's certified decision dated November 10, 2009.  The petitioner's initial evidence included a written consultation from a labor organization, a written contract between the petitioner and beneficiary group, and an itinerary, as required by 8 C.F.R. § 214.2(p)(2)(ii).  The director did not request additional evidence with respect to these evidentiary requirements.

## II.  CULTURALLY UNIQUE

The sole issue certified for review is whether the beneficiary group's performance is culturally unique.  The director acknowledged that the petitioner submitted evidence required by 8 C.F.R. § 214.2(p)(6)(ii) but found the evidence unpersuasive in establishing that the beneficiary group's "hybrid" musical style can be considered culturally unique.  Upon review, the petitioner has submitted sufficient evidence to establish that the performance of Orquesta Kef is culturally unique.

In a letter dated September 26, 2009, the petitioner described the beneficiary group and its musical style as follows: "This ensemble is composed

of seven musicians from Argentina, who have been performing together between 4 to 8 years and whose music blends klezmer (Jewish music of Eastern Europe) with [L]atin and South American influences."

The petitioner also included a short biography of the group, which indicates that the ensemble plays "traditional, classical and contemporary Jewish songs" and "brings together the emotion, passion and spirit of Jewish music." The biography indicates that the band developed "its own and unique musical style" that is "based on the millenary force of tradition and the powerful emotion of the Jewish culture, mixed in with Latin American sounds."

The regulation at 8 C.F.R. § 214.2(p)(6)(ii) requires that the petitioner establish that the beneficiaries' performance is culturally unique through submission of affidavits, testimonials, or letters, or through published reviews of the beneficiaries' work. The petitioner has submitted both types of evidence in support of the petition.

### A. Affidavits, Testimonials, or Letters from Recognized Experts

The regulation at 8 C.F.R. § 214.2(p)(6)(ii)(A) requires the petitioner to submit affidavits, testimonials, or letters from recognized experts attesting to the authenticity of the alien's or group's skills in performing, presenting, coaching, or teaching the unique or traditional art form and giving the credentials of the expert, including the basis of his or her knowledge of the alien's or group's skill.

The petitioner provided a letter from Josh Kun, Associate Professor at the University of Southern California's Annenberg School for Communication, who indicates that he is a scholar who teaches, researches, and publishes on both Jewish music and the music of Latin America. Professor Kun establishes that he is familiar with the beneficiary group's body of work and states:

> This band's uniqueness lies in their ability to fuse cultures, to use music to meld diverse elements from their native Argentine culture with the multiple musical traditions of Eastern Europe.
> As South Americans born to immigrant Eastern European parents, they use their music to explore their mixed identities and re-visit the musical traditions and heritages of their parents['] families. As Argentineans, they also draw on many influences of the folkloric music of their own country which they then incorporate into a variety of klezmer forms. . . .
> Klezmer music is often seen as the music of a specific ethnic group of people. Yet while it originates in Eastern Europe, it is a music [of] change and transformation and has migrated to different parts of the world through the Jewish Diaspora. By mixing with the cultures and influences of the hosting countries where it lands, the music is continually re-imagined in new forms. The Argentine Jewish music

of [the beneficiaries] is a great example of these travels and combinations. As leading exponents and innovators of South American klezmer, [the beneficiary group] is has [sic] rightfully been acclaimed as one of the world's most interesting and important ensembles working within the new styles of klezmer music.

The petitioner also provided a letter from Leigh Ann Hahn, Director of Programming and Associate Director of Grand Performances, in Los Angeles, California, who writes:

I have seen [the beneficiary group] perform numerous times in Buenos Aires. In addition to [the beneficiary group] being fine musicians, they embody the spirit of Jewish Argentina. I have followed their career for at least five years, and am continuously captivated by their unique sound and ability to seamlessly fuse cultural influences. Based on my considerable experience, there are no other musical groups in the world who blend klezmer with tango and Argentine folk styles, making them a singular expression of Buenos Aires' Jewish immigrant community.

Finally, the petitioner submitted a letter from Dr. F. John Herbert, Executive Director of Legion Arts, who states that the beneficiary group is "internationally recognized for blending klezmer and tango with Argentine folk styles, creating a singular expression of Buenos Aires Jewish immigrant identity." He describes the group as "outstanding representatives of the cultural traditions of Jewish Argentina, possessing a sound that's absolutely distinctive, accompanied by a recognized ability to fuse diverse social and artistic influences."

### B. Documentation That the Performance Is Culturally Unique

The regulation at 8 C.F.R. § 214.2(p)(6)(ii)(B) requires the petitioner to submit documentation that the performance of the alien or group is culturally unique, as evidenced by reviews in newspapers, journals, or other published materials.

The petitioner submitted an article by Gabriel Plaza, published in the November 17, 2005, issue of *La Nacion*, which indicates that the beneficiary group is becoming established as "the indispensable attraction in Jewish community festivals," and "has its own unique style with new arrangements, based on the traditional Jewish repertoire," but "influenced by other sounds." The article includes quotes from one of the beneficiaries, who states that the band was formed "to revive the festive spirit within the Jewish community in Argentina." The author writes that the group "blends the vivacious festiveness of Argentine Jewish music with other rhythms that come from across Eastern Europe." The article also discusses generally a "Balkan music phenomenon" growing in Argentina from local roots.

The petitioner also submitted an article by Nicolas Artusi for the largest print and internet newspaper in Argentina, which features the beneficiary group among three bands that create music in Argentine Hebrew and refers to the group as the "Yiddish mom" of Argentine Jewish music. The article also speaks of an "Urban Passover" occurring on the streets of Argentina "where the religious celebration is brought to the city's main square."

Finally, the petitioner submitted a review of the beneficiaries' 2004 album, "Música Judía" by Ari Davidow, for a specialized website that follows klezmer music. Mr. Davidow describes the group's music as "modern Yeshivish" with "the simplicity and excitement of rock and roll." He distinguishes the music from "American post-revival klezmer" and notes that it includes older Israeli dance songs and music from modern Orthodox artists.

In her decision, the director acknowledged and included quotations from all of the submitted expert opinion letters and published materials, and reached the following conclusion:

> The evidence repeatedly suggests that the group performs a hybrid or fusion style of music, incorporating musical styles from other cultures and regions. A hybrid or fusion style of music cannot be considered culturally unique to one particular country, nation, society, class, ethnicity, religion, tribe, or other group of persons. The beneficiaries' performance does not evince a style of artistic expression, methodology, or medium which is considered unique to a particular country, nation, society, class, ethnicity, tribe or other group of persons. The performances must be demonstrated to be socially or regionally different or distinct and the evidence of record does not support that.

Although the director selected quotations from all of the above-referenced evidence, she declined to comment specifically on any one piece of evidence, other than noting that Mr. Davidow's review of the beneficiary group's album "fails to even mention that the group's music is considered culturally unique to the Jewish Argentine community."

For these reasons, the director recommended denial of the petition.

## III. ANALYSIS

Upon review, the director's reasoning is not supported by the record. The regulations define "culturally unique" as a style of artistic expression, methodology, or medium which is unique to a particular country, nation, society, class, ethnicity, religion, tribe or other group of persons. 8 C.F.R. § 214.2(p)(3). The AAO can find no justification for the director's

exclusion from this definition of a distinct artistic expression that is derived from a hybrid or fusion of artistic styles or traditions from more than one culture or region.

Rather, the fact that the regulatory definition allows its application to an unspecified "group of persons" makes allowances for beneficiaries whose unique artistic expression crosses regional, ethnic, or other boundaries. While a style of artistic expression must be exclusive to an identifiable people or territory to qualify under the regulations, the idea of "culture" is not static and must allow for adaptation or transformation over time and across geographic boundaries. The term "group of persons" gives the regulatory definition a great deal of flexibility and allows for the emergence of distinct subcultures. Furthermore, the nature of the regulatory definition of "culturally unique" requires USCIS to make a case-by-case factual determination based on the agency's expertise and discretion. Of course, the petitioner bears the burden of establishing by a preponderance of the evidence that the beneficiaries' artistic expression, while drawing from diverse influences, is unique to an identifiable group of persons with a distinct culture. To determine whether the beneficiaries' artistic expression is unique, the director must examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the entire record. *Matter of Chawathe*, 25 I&N Dec. 369, 376 (AAO 2010).

The director's decision failed to note that the beneficiary group is a klezmer band and seemed to struggle to identify the nature of the group's musical performance, focusing instead on the group's musical influences. Here, the evidence establishes that the beneficiaries' music is, first and foremost, Jewish klezmer music that has been uniquely fused with traditional Argentine musical styles.

The AAO finds the expert opinion of Professor Kun particularly persuasive, because he explains that klezmer music, while often associated with ethnically Jewish people, is an artistic form that has migrated and is continually mixed with and influenced by other cultures. He also explains how the beneficiaries, as South Americans born to Eastern European immigrants, came to be influenced by both cultures to create something new and unique to their experience. All three opinion letters recognize the existence of a distinct Jewish Argentine culture and identity that is expressed in the beneficiary group's music and opine that the beneficiary group is a "leading exponent and innovator of South American klezmer."

The regulation at 8 C.F.R. § 214.2(p)(6)(ii)(A) specifically permits the petitioner to submit affidavits, testimonials, or letters from recognized experts attesting to the group's performance of a culturally unique art form. USCIS may reject an expert opinion letter, or give it less weight, if it is not in accord

with other information in the record or if it is in any way questionable. *Matter of Caron Int'l, Inc.*, 19 I&N Dec. 791, 795 (Comm'r 1988). In the present matter, the director did not question the credentials of the experts, take issue with their knowledge of the group's musical skills, or otherwise find reason to doubt the veracity of their testimony. The AAO finds the uncontroverted testimony to be reliable, relevant, and probative as to the specific facts in issue. Accordingly, the expert testimony satisfies the evidentiary requirement at 8 C.F.R. § 214.2(p)(6)(ii)(A).

Furthermore, the published articles submitted recognize a musical movement in Argentina that fuses Argentine styles with influences from Jewish music and other Eastern European styles. The articles and opinion letters place the beneficiary group directly at the forefront of this trend. Although the director highlighted references to "rock and roll" and other external influences on the beneficiaries' music, the evidence as a whole establishes that the beneficiaries' audience is a Jewish audience. There is nothing in the record to suggest that the beneficiary group is recognized in any circle as a mainstream rock band.

## IV. CONCLUSION

The regulations do not require that an art form be "traditional" in order to qualify as culturally unique. Here, the AAO finds the expert testimony and the corroborating evidence to be relevant, probative, and credible. The petitioner has established by a preponderance of the evidence that the modern South American klezmer music performed by the beneficiary group is representative of the Jewish culture of the beneficiaries' home country of Argentina. Accordingly, the group's musical performance falls within the regulatory definition of culturally unique.

Finally, the petitioner has submitted an itinerary indicating that the beneficiary group will be performing its culturally unique music at Jewish cultural centers and temples during its short United States tour. The AAO is satisfied that the group's performances will be culturally unique events, as required by 8 C.F.R. § 214.2(p)(6)(ii)(C).

In visa petition proceedings, the burden of proving eligibility for the benefit sought remains entirely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1362 (2006). Here, that burden has been met.

**ORDER:** The decision of the director is withdrawn. The petition is approved.