# Matter of LEACHENG INTERNATIONAL, INC.

*Decided April 9, 2015[1]*

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Administrative Appeals Office

(1) The definition of "doing business" at 8 C.F.R. § 204.5(j)(2) (2014) contains no requirement that a petitioner for a multinational manager or executive must provide goods and or services to an unaffiliated third party.

(2) A petitioner may establish that it is "doing business" by demonstrating that it is providing goods and/or services in a regular, systematic, and continuous manner to related companies within its multinational organization.

ON BEHALF OF PETITIONER:  Alan Lee, Esquire, New York, New York

The petitioner is a United States subsidiary of a Chinese clothing manufacturing company that filed an Immigrant Petition for Alien Worker (Form I-140) to classify the beneficiary as a multinational manager or executive pursuant to section 203(b)(1)(C) of the Immigration and Nationality Act, 8 U.S.C. §1153(b)(1)(C) (2012).  The petitioner seeks to employ the beneficiary in the position of deputy general manager.  The Texas Service Center Director ("Director") denied the petition, finding that the petitioner failed to establish that it had been doing business for at least 1 year as of the date the petition was filed.  The petitioner's appeal to the Administrative Appeals Office ("AAO") will be sustained.

## I.  APPLICABLE LAW

Section 203(b) of the Act states in pertinent part:

> (1) Priority workers
> Visas shall first be made available . . . to qualified immigrants who are aliens described in any of the following subparagraphs (A) through (C):
>     . . . .
>     (C) Certain multinational executives and managers

---

[1]  This decision was originally entered on March 27, 2014.  The matter has been reopened on the Administrative Appeals Office's own motion for the limited purpose of making revisions for designation of this decision as precedent.

An alien is described in this subparagraph if the alien, in the 3 years preceding the time of the alien's application for classification and admission into the United States under this subparagraph, has been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and the alien seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive.

Pursuant to 8 C.F.R. § 204.5(j)(3)(i)(D) (2014), the petitioner must establish that it has been doing business for at least 1 year. In turn, 8 C.F.R. § 204.5(j)(2) provides that "*[d]oing business* means the regular, systematic, and continuous provision of goods and/or services by a firm, corporation, or other entity and does not include the mere presence of an agent or office."

## II.  FACTUAL BACKGROUND

The petitioner is an affiliate of the beneficiary's former Hong Kong employer, both of which are owned by the petitioner's Chinese parent company. Established in New York in 2008, the petitioner imports and sells the parent company's products to United States customers, primarily major clothing retailers. The petitioner directly performed these sales activities through 2011. However, beginning on or about January 2012, it has provided marketing, sales, and shipping services in the United States pursuant to a service agreement with its Hong Kong affiliate.

The petitioner submitted a service agreement with its affiliate, which indicates that the petitioner "accepts commissions from [the Hong Kong affiliate] on the basis of full investigation of the overseas market" and provides services. The services include performing marketing research to support the affiliate's marketing strategies, assisting in the expansion of its customer base, supporting customer relations, assisting with after-sales services, facilitating import customs clearance for foreign-manufactured products, arranging storage and logistics issues in the United States, and assisting in the collection of payments.

For these services, the Hong Kong affiliate pays a service fee ("payment quota multiplied by 3.5%") and compensates the petitioner for labor and other expenses (rent, mailing fees, and travel). The petitioner submitted copies of monthly service fee invoices issued to its Hong Kong affiliate in amounts ranging from approximately $300,000 to $590,000, along with evidence of payments received. The petitioner also provided extensive evidence of its correspondence with customers and other evidence of its performance of the services outlined in the service agreement. Furthermore, the petitioner submitted copies of commercial sales invoices

issued by the Hong Kong affiliate to United States customers and copies of bills of lading as evidence of the import and sales activities. Finally, the record establishes that the petitioner maintains service contracts with several shipping carriers to fulfill its obligations under the service agreement.

The Director concluded that the petitioner was not doing business as required by the regulations, reasoning that the petitioner's evidence "do[es] not indicate 'doing business' with independent corporations or entities" for a full year preceding the filing of the petition, but rather "only demonstrate[s] the shipment of goods from the foreign company to the U.S. company." Specifically, the Director found that the petitioner, as a clothing importer, should have provided invoices or evidence of payment of invoices from the customers who purchased the clothing for the year preceding the filing of the petition.

On appeal, the petitioner asserts that the Director erred and that existing case law and regulatory history support a conclusion that the petitioner is doing business in a regular, systematic, and continuous fashion despite the fact that it is not a named party to contracts with buyers in the United States. The petitioner states that the evidence establishes it acts as an intermediary between its Hong Kong affiliate and the United States buyers and suppliers by locating customers and finalizing the details of sales contracts for the benefit of the affiliate. In a letter submitted on appeal, the petitioner further explains that while its affiliate is named on customer contracts, the record shows the petitioner "continues to secure these sales contracts by marketing, designing, corresponding and finalizing the terms of every U.S. sales contract" and by receiving all shipments of imported goods at its New York location. The petitioner contends that the regulatory definition of "doing business" does not require that it be a direct party to contracts or a direct provider of goods and services to a United States customer.

## III. ANALYSIS

The Director's finding that the petitioner did not submit evidence of doing business with "independent corporations or entities" implies a requirement that a petitioner must transact directly with an unaffiliated third party. However, the definition of "doing business" at 8 C.F.R. § 204.5(j)(2) contains no requirement that a petitioner for a multinational manager or executive must provide goods or services to an unaffiliated third party. Neither the plain language nor the regulatory history of the "doing business" provision supports such a requirement.

The regulatory definitions of "doing business" applicable to immigrant multinational manager and executive petitions and to nonimmigrant intracompany transferee petitions are nearly identical. *Compare* 8 C.F.R. § 204.5(j)(2) (immigrant multinational executives and managers), *with* 8 C.F.R. § 214.2(l)(1)(ii)(H) (2014) (L-1 nonimmigrant intracompany transferees). The former Immigration and Naturalization Service ("INS") proposed the current definition of "doing business" in the nonimmigrant L-1 context in a 1986 proposed rule. *See* Documentary Requirements for Nonimmigrants; Waivers, Admission of Certain Inadmissible Aliens, Parole, 51 Fed. Reg. 18,591, 18,596 (May 21, 1986) (Supplementary Information) ("'Doing business' means the regular, systematic and continuous provision of goods and/or services by a qualifying organization and shall not include the mere presence of an agent or office of the qualifying organization in the United States or abroad.").

Responding to public commenters' concern that the proposed definition might disqualify liaison office arrangements from L-1 classification, the INS explained in the preamble to its final rule that "[t]he Service recognizes that company representatives and liaison offices provide services in the United States, even if the services are to a company outside the United States. Such services are included in the doing business definition . . . ." Temporary Alien Workers Seeking Classification Under the Immigration and Nationality Act, 52 Fed. Reg. 5738, 5741 (Feb. 26, 1987) (Supplementary Information).[2] In its 1991 final rule promulgating the current "doing business" definition in the immigrant context at 8 C.F.R. § 204.5(j)(2), the INS indicated, "This requirement is similar to one pertaining to intra-company transferees under the L-1 nonimmigrant classification." Employment-Based Immigrants, 56 Fed. Reg. 60,897, 60,899 (Nov. 29, 1991) (Supplementary Information). As such, we interpret the two "doing business" provisions similarly and decline to read a third party or nonaffiliation requirement into these regulations.

Accordingly, a petitioner may establish that it is "doing business" by demonstrating that it is providing goods and/or services in a regular, systematic, and continuous manner to related companies within its multinational organization. To determine whether a petitioner has met its burden, we consider the totality of the record, including relevant documentation to substantiate the petitioner's business activities. The fact that a petitioner serves as an agent, representative, or liaison between a

---

[2] The language of the proposed rule differed slightly from the final rule. *Compare* 51 Fed. Reg. at 18,596, *with* 52 Fed. Reg. at 5752. No explanation was provided for this difference. This change in language does not impact the outcome of this case.

related foreign entity and its United States customers does not preclude a finding that it is doing business as defined in the regulations.

Here, the petitioner established that it provides services to its foreign affiliate by marketing the foreign entity's products, locating buyers, maintaining relationships with customers, and facilitating the completion of sales contracts and shipping arrangements in the United States.  It provided a copy of its service agreement with the foreign affiliate and substantial evidence that it is, in fact, performing the services specified in the contract on a regular, systematic, and continuous basis.  In this regard, the evidence presented shows that the petitioner billed the foreign entity for over $4.1 million in service fees in 2012 and paid $2.5 million in wages to its employees in the United States.

The petitioner has established that it is doing business based on its regular, systematic, and continuous provision of services in the United States, and it has demonstrated that its operation does not constitute the "mere presence" of an agent or office.  8 C.F.R. § 204.5(j)(2).  Accordingly, the Director's decision will be withdrawn.

## IV.  CONCLUSION

In visa petition proceedings, it is the petitioner's burden to establish eligibility for the immigration benefit sought.  *See* section 291 of the Act, 8 U.S.C. § 1361 (2012); *Matter of Skirball Cultural Center*, 25 I&N Dec. 799, 806 (AAO 2012).  Here, the petitioner has sustained that burden.  Accordingly, the Director's decision is withdrawn.

**ORDER:**  The appeal is sustained and the petition is approved.