# Matter of SIMEIO SOLUTIONS, LLC

*Decided April 9, 2015*

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Administrative Appeals Office

(1) A change in the place of employment of a beneficiary to a geographical area requiring a corresponding Labor Condition Application for Nonimmigrant Workers ("LCA") be certified to the U.S. Department of Homeland Security with respect to that beneficiary may affect eligibility for H-1B status; it is therefore a material change for purposes of 8 C.F.R. §§ 214.2(h)(2)(i)(E) and (11)(i)(A) (2014).

(2) When there is a material change in the terms and conditions of employment, the petitioner must file an amended or new H−1B petition with the corresponding LCA.

ON BEHALF OF PETITIONER:  Candie Tou Clement, Esquire, Clawson, Michigan

The California Service Center Director ("Director") revoked the petitioner's nonimmigrant visa petition and certified the decision to the Administrative Appeals Office ("AAO") for review.  The AAO finds that the petitioner has not overcome the specified grounds for revocation. [1] Accordingly, the Director's decision will be affirmed and the petition's approval will be revoked.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

The petitioner filed a Petition for a Nonimmigrant Worker (Form I-129) to classify the beneficiary as an H−1B temporary nonimmigrant worker pursuant to section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(i)(b) (2012).  In support of the petition, the petitioner submitted a certified Department of Labor ("DOL") Labor Condition Application for Nonimmigrant Workers (ETA Form 9035/9035E) ("LCA").  On the Form I-129, the petitioner described itself as an enterprise that provides information technology services.  At the time the petition was filed, the beneficiary maintained nonimmigrant status as an

---

[1]  The AAO conducts appellate review on a de novo basis.  *See Dor v. Dist. Dir., INS*, 891 F.2d 997, 1002 n.9 (2d Cir. 1989).

F−1 student and was employed by the petitioner pursuant to post-degree optional practical training.

On the Form I-129, in the LCA, and in a letter of support, the petitioner attested that it would employ the beneficiary to serve on an in-house project at the petitioner's facility, with an annual salary of $50,232. The petitioner identified an address in Long Beach, California (Los Angeles-Long Beach-Santa Ana, CA Metropolitan Statistical Area) as the beneficiary's place of employment.[2] The petitioner stated that the beneficiary would provide services for a specific client and emphasized that "[the beneficiary] is and will continue to work from [the petitioner's] Long Beach office." The petitioner did not request other worksites and did not submit an itinerary. *See* 8 C.F.R. § 214.2(h)(2)(i)(B) (2014) (requiring an itinerary for services performed in more than one location). Based upon this record, the Director approved the Form I-129 petition.

After working for the petitioner in H−1B status for approximately 2 months, the beneficiary departed from the United States and applied for an H−1B visa at the United States Embassy in New Delhi, India, based on the approved petition. After interviewing the beneficiary, the Department of State consular officer requested additional documentation, including a letter from the petitioner's client regarding the work to be performed by the beneficiary. The petitioner did not submit the requested documentation and, instead, indicated that the beneficiary provided services to clients not previously identified in the approved petition. The Embassy returned the petition to the Director for review, stating that during the course of the visa interview process, the beneficiary and the petitioner presented information that was not available to the Director at the time the petition was approved.

Thereafter, officers of the United States Citizenship and Immigration Services ("USCIS") conducted a site visit at the petitioner's Long Beach facility, the place of employment specified in the H−1B petition and supporting documents.[3] The officers' site visit report is summarized in

---

[2] With certain limited exceptions, the applicable DOL regulations define the term "place of employment" as the worksite or physical location where the work actually is performed by the H−1B nonimmigrant. *See* 20 C.F.R. § 655.715 (2014). The Office of Management and Budget established Metropolitan Statistical Areas to provide nationally consistent geographic delineations for collecting, tabulating, and publishing statistics. *See* 31 U.S.C. § 1104(d) (2012); 44 U.S.C. § 3504(e)(3) (2012); Exec. Order No. 10,253, 16 Fed. Reg. 5605 (June 11, 1951); 2010 Standards for Delineating Metropolitan and Micropolitan Statistical Areas, 75 Fed. Reg. 37,246, 37,246–52 (June 28, 2010) (discussing and defining, inter alia, Metropolitan Statistical Areas).

[3] Although the petitioner bears the burden to establish eligibility for the benefit sought, USCIS may verify information submitted to meet that burden. Agency verification methods may include, but are not limited to, review of public records and information;

(continued . . .)

relevant part as follows: Unable to locate the petitioner's office at the address identified in the petition and LCA, the officers ascertained from the property manager that the petitioner had vacated the facility 2 months after the start date of the beneficiary's H−1B employment. The officers then contacted the petitioner's director of operations, the Form I-129 petition signatory, who indicated that the company currently utilized an employee's home as the company address. The officers then visited the company's newly provided address, at which the resident-employee stated that the petitioner employed approximately 45 to 50 people, the beneficiary was assigned to the petitioner's Los Angeles office, and all employees assigned to that office either worked from home or from a client worksite.

Thereafter, the Director issued a notice of intent to revoke the approval of the petition ("NOIR"). The NOIR provided a detailed statement of the related revocation ground and afforded the petitioner an opportunity to provide a rebuttal. *See* 8 C.F.R. § 214.2(h)(11)(iii)(B).

In response, the petitioner confirmed that the beneficiary was no longer working on the project or at the location specified in the original petition. The petitioner stated that the beneficiary's services had been used for "various end users" and that he had worked either out of the petitioner's Long Beach office or from his home office. With its response, the petitioner submitted a new LCA that provided two new worksites—in Camarillo, California (Oxnard-Thousand Oaks-Ventura Metropolitan Statistical Area), and Hoboken, New Jersey (New York-Newark-Jersey City, NY-NJ-PA Metropolitan Statistical Area)—as the beneficiary's places of employment. Both worksites are located in metropolitan statistical areas different from the worksite listed on the original petition.

The Director concluded that the changes in the beneficiary's places of employment constituted a material change to the terms and conditions of employment as specified in the original petition. Pursuant to 8 C.F.R. § 214.2(h)(2)(i)(E), the petitioner was required to file an amended Form I-129 corresponding to a new LCA that reflects these changes. The petitioner failed to file an amended petition, and accordingly, the Director revoked the nonimmigrant visa petition and certified the decision to the AAO.

---

contact via written correspondence, the Internet, facsimile or other electronic transmission, or telephone; unannounced physical site inspections of residences and places of employment; and interviews. *See generally* sections 103, 204, 205, 214, 291 of the Act; 8 U.S.C. §§ 1103, 1154, 1155, 1184, 1361 (2012); 8 C.F.R. § 103.2(b)(7) (2014).

## II.  LCA AND H−1B VISA PETITION PROCESS

In pertinent part, the Act defines an H−1B nonimmigrant worker as

> an alien . . . who is coming temporarily to the United States to perform services . . . in a specialty occupation described in section 214(i)(1) . . . who meets the requirements for the occupation specified in section 214(i)(2) . . . and with respect to whom *the Secretary of Labor determines and certifies to the [Secretary of Homeland Security] that the intending employer has filed with the Secretary [of Labor] an application under section 212(n)(1).*

Section 101(a)(15)(H)(i)(b) of the Act (emphasis added).[4]

In turn, section 212(n)(1)(A)(i) of the Act, 8 U.S.C. § 1182(n)(1)(A)(i) (2012), requires an employer to pay an H−1B worker the higher of either the prevailing wage for the occupational classification in the "area of employment" or the actual wage paid by the employer to other employees with similar experience and qualifications who are performing the same services.[5] *See* 20 C.F.R. § 655.731(a) (2014); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 422 & n.3 (4th Cir. 2005); *Michal Vojtisek-Lom & Adm'r Wage & Hour Div. v. Clean Air Tech. Int'l, Inc.*, No. 07-097, 2009 WL 2371236, at *8 (Dep't of Labor Admin. Rev. Bd. July 30, 2009).

Implemented through the LCA certification process, section 212(n)(1) is intended to protect United States workers' wages by eliminating economic incentives or advantages in hiring temporary foreign workers. *See, e.g.*, Labor Condition Applications and Requirements for Employers Using Nonimmigrants on H−1B Visas in Specialty Occupations and as Fashion Models; Labor Certification Process for Permanent Employment of Aliens in the United States, 65 Fed. Reg. 80,110, 80,110–11, 80,202 (Dec. 20, 2000) (Supplementary Information).  The LCA currently requires petitioners to describe, inter alia, the number of workers sought, the pertinent visa classification for such workers, their job title and occupational classification, the prevailing wage, the actual rate of pay, and the place(s) of employment.

---

[4]   Pursuant to section 1517 of the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2135, 2311 (codified at 6 U.S.C. § 557 (2012)), any reference to the Attorney General in a provision of the Act describing functions that were transferred from the Attorney General or other Department of Justice official to the Department of Homeland Security by the HSA "shall be deemed to refer to the Secretary" of Homeland Security.  *See also* 6 U.S.C. § 542 note (2012); 8 U.S.C. § 1551 note (2012).

[5]   The prevailing wage may be determined based on the arithmetic mean of the wages of workers similarly employed in the area of intended employment.  20 C.F.R. § 655.731(a)(2)(ii) (2014).

To promote the United States worker protection goals of a statutory and regulatory scheme that allocates responsibilities sequentially between DOL and the Department of Homeland Security ("DHS"), a prospective employer must file an LCA and receive certification from DOL before an H−1B petition may be submitted to USCIS. 8 C.F.R. § 214.2(h)(4)(i)(B)(1); 20 C.F.R. § 655.700(b)(2) (2014).[6] If an employer does not submit the LCA to USCIS in support of a new or amended H−B petition, the process is incomplete and the LCA is not certified to the Secretary of Homeland Security. *See* section 101(a)(15)(H)(i)(b) of the Act; 8 C.F.R. § 214.2(h)(4)(i)(B)(1); 20 C.F.R. § 655.700(b); *see also* Labor Condition Applications and Requirements for Employers Using Aliens on H−1B Visas in Specialty Occupations and as Fashion Models, 57 Fed. Reg. 1316, 1318 (Jan. 13, 1992) (Supplementary Information) (discussing filing sequence); Labor Condition Applications and Requirements for Employers Using Aliens on H−1B Visas in Specialty Occupations, 56 Fed. Reg. 37,175, 37,177 (Aug. 5, 1991) (Supplementary Information).

In the event of a material change to the terms and conditions of employment specified in the original petition, the petitioner must file an amended or new petition with USCIS with a corresponding LCA. Specifically, the pertinent regulation requires the following:

> The petitioner shall file an amended or new petition, with fee, with the Service Center where the original petition was filed to reflect any material changes in the terms and conditions of employment or training or the alien's eligibility as specified in the original approved petition. An amended or new H–1C, H–1B, H–2A, or H–2B petition must be accompanied by a current or new Department of Labor determination. *In the case of an H–1B petition, this requirement includes a new labor condition application.*

8 C.F.R. § 214.2(h)(2)(i)(E) (emphasis added). Furthermore, petitioners must "immediately notify the Service of any changes in the terms and conditions of employment of a beneficiary which may affect eligibility" for H−1B status and, if they will continue to employ the beneficiary, file an amended petition. 8 C.F.R. § 214.2(h)(11)(i)(A).

---

[6] Upon receiving DOL's certification, the prospective employer then submits the certified LCA to USCIS with an H−1B petition on behalf of a specific worker. 8 C.F.R. § 214.2(h)(2)(i)(A), (2)(i)(E), (4)(iii)(B)(1). DOL reviews LCAs "for completeness and obvious inaccuracies" and will certify the LCA absent a determination that the application is incomplete or obviously inaccurate. Section 212(n)(1)(G)(ii) of the Act. In contrast, USCIS must determine whether the attestations and content of an LCA correspond to and support the H−1B visa petition, including the specific place of employment. 20 C.F.R. § 655.705(b) (2014); *see also* 8 C.F.R. § 214.2(h)(4)(i)(B).

A change in the place of employment of a beneficiary to a geographical area requiring a corresponding LCA be certified to DHS with respect to that beneficiary may affect eligibility for H−1B status; it is therefore a material change for purposes of 8 C.F.R. § 214.2(h)(2)(i)(E) and (11)(i)(A).[7] When there is a material change in the terms and conditions of employment, the petitioner must file an amended or new H−1B petition with the corresponding LCA. 8 C.F.R. § 214.2(h)(2)(i)(E).

## III. ANALYSIS

In this matter, the petitioner claimed in both the Form I-129 petition and the certified LCA that the beneficiary's place of employment was located in Long Beach, California (Los Angeles-Long Beach-Santa Ana, CA Metropolitan Statistical Area). After conducting the site visit, USCIS determined that the beneficiary was not employed at that designated place of employment. In response to the Director's NOIR, the petitioner indicated the beneficiary's places of employment as Camarillo, California (Oxnard-Thousand Oaks-Ventura Metropolitan Statistical Area), and Hoboken, New Jersey (New York-Newark-Jersey City, NY-NJ-PA Metropolitan Statistical Area).[8] No other locations were provided.

---

[7] This interpretation of the regulations clarifies, but does not depart from, the agency's past policy pronouncements that "[t]he mere transfer of the beneficiary to another work site, in the same occupation, does not require the filing of an amended petition, provided the initial petitioner remains the alien's employer and, provided further, the supporting labor condition application remains valid." Memorandum from T. Alexander Aleinikoff, INS Exec. Assoc. Comm'r, Office of Programs (Aug. 22, 1996), at 1–2 (Amended H−1B Petitions), *reprinted in* 73 *Interpreter Releases* No. 35, Sept. 16, 1996, app. III at 1222, 1231–32; *see also* Petitioning Requirements for the H Nonimmigrant Classification, 63 Fed. Reg. 30,419, 30,420 (June 4, 1998) (Supplementary Information) (stating in pertinent part that the "proposed regulation would not relieve the petitioner of its responsibility to file an amended petition when required, for example, when the beneficiary's transfer to a new work site necessitates the filing of a new labor condition application"). To the extent any previous agency statements may be construed as contrary to this decision, those statements are hereby superseded. *See, e.g.*, Letter from Efren Hernandez III, Dir., Bus. and Trade Branch, USCIS, to Lynn Shotwell, Am. Council on Int'l Pers., Inc. (Oct. 23, 2003). We need not decide here whether, for purposes of 8 C.F.R. § 214.2(h)(2)(i)(E), there may be material changes in terms and conditions of employment that do not affect the alien's eligibility for H−1B status but nonetheless require the filing of an amended or new petition.

[8] The record indicates that the new places of employment were not short-term placements. *See generally* 20 C.F.R. §§ 655.715, 655.735 (2014). The petitioner did not claim, and the AAO does not find, that these new work locations fall under "non-worksite" locations, as described at 20 C.F.R. § 655.715, or short-term placements or assignments, as described at 20 C.F.R. § 655.735.

A change in the terms and conditions of employment of a beneficiary that may affect eligibility under section 101(a)(15)(H) of the Act is a material change. *See* 8 C.F.R. § 214.2(h)(2)(i)(E); *see also* 8 C.F.R. § 214.2(h)(11)(i)(A) (requiring that a petitioner file an amended petition to notify USCIS of any material changes affecting eligibility of continued employment or be subject to revocation).

Because section 212(n) of the Act ties the prevailing wage to the "area of employment," a change in the beneficiary's place of employment to a geographical area not covered in the original LCA would be material for both the LCA and the Form I-129 visa petition, since such a change may affect eligibility under section 101(a)(15)(H) of the Act. *See, e.g.*, 20 C.F.R. § 655.735(f) (2014). If, for example, the prevailing wage is higher at the new place of employment, the beneficiary's eligibility for continued employment in H−1B status will depend on whether his or her wage for the work performed at the new location will be sufficient. Fundamentally, for an LCA to be effective and correspond to an H−1B petition, it must specify the beneficiary's place(s) of employment.[9]

Here, the Form I-129 and the originally submitted LCA identified the Long Beach, California, facility as the place of employment. The LCA did not cover either the Camarillo, California, or the Hoboken, New Jersey, addresses requested in response to the NOIR. In addition, the petitioner attested on the Form I-129 that it would pay the beneficiary a salary approximately $9,000 less than would be required for the subsequently identified places of employment in Camarillo, California, and Hoboken, New Jersey, contrary to sections 101(a)(15)(H)(i)(b) and 212(n)(1) of the Act.[10] Such changes in the terms and conditions of the beneficiary's employment may, and in this case did, affect eligibility under section 101(a)(15)(H) of the Act.

---

[9] A change in the beneficiary's place of employment may impact other eligibility criteria, as well. For example, at the time of filing, the petitioner must have complied with the DOL posting requirements at 20 C.F.R. § 655.734. Additionally, if the beneficiary will be performing services in more than one location, the petitioner must submit an itinerary with the petition listing the dates and locations. 8 C.F.R. § 214.2(h)(2)(i)(B); *see also* 8 C.F.R. § 103.2(b)(1).

[10] The LCAs list the prevailing wage for the designated occupational category as $50,232 per year in Long Beach, California (Los Angeles-Long Beach-Santa Ana, CA Metropolitan Statistical Area); $59,904 per year in Camarillo, California (Oxnard-Thousand Oaks-Ventura Metropolitan Statistical Area); and $59,613 per year in Hoboken, New Jersey (New York-Newark-Jersey City, NY-NJ-PA Metropolitan Statistical Area). On each LCA, the petitioner identified the source of the prevailing wage as the DOL Office of Foreign Labor Certification's Occupational Employment Statistics.

Having materially changed the beneficiary's authorized place of employment to geographical areas not covered by the original LCA, the petitioner was required to immediately notify USCIS and file an amended or new H−1B petition, along with a corresponding LCA certified by DOL, with both documents indicating the relevant change. [11]   8 C.F.R. § 214.2(h)(2)(i)(E), (h)(11)(i)(A).   By failing to file an amended petition with a new LCA, or by attempting to submit a preexisting LCA that has never been certified to USCIS with respect to a specific worker, a petitioner may impede efforts to verify wages and working conditions.   Full compliance with the LCA and H−1B petition process, including adhering to the proper sequence of submissions to DOL and USCIS, is critical to the United States worker protection scheme established in the Act and necessary for H−1B visa petition approval.

## IV.  CONCLUSION

It is the petitioner's burden to establish eligibility for the immigration benefit sought.  Section 291 of the Act, 8 U.S.C. § 1361 (2012); *Matter of Skirball Cultural Center*, 25 I&N Dec. 799, 806 (AAO 2012).  Here, that burden has not been met.  The AAO will affirm the decision of the Director.  The Form I-129 petition's approval is revoked pursuant to 8 C.F.R. § 214.2(h)(11)(iii)(A)(1), (A)(3), and (A)(4).[12]

**ORDER:**  The Director's decision is affirmed.  The petition is revoked.

---

[11]  Here, the petitioner submitted a new LCA certified for the beneficiary's places of employment in Camarillo, California, and Hoboken, New Jersey, in response to the NOIR.  This LCA was not previously certified to USCIS with respect to the beneficiary and, therefore, it had to be submitted to USCIS as part of an amended or new petition before the beneficiary would be permitted to begin working in those places of employment.  *See* 8 C.F.R. § 214.2(h)(2)(i)(E).

[12]  Since the identified ground for revocation is dispositive of the petitioner's continued eligibility, the AAO need not address any additional issues in the record of proceeding.