# Matter of BAY AREA LEGAL SERVICES, INC., Applicant
Request for Accreditation

*Decided May 22, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Office of the Director

(1)  The Assistant Director for Policy has the discretion to extend the deadline for a request for reconsideration made pursuant to 8 C.F.R. § 1292.13(e), but not for a request for reconsideration made pursuant to 8 C.F.R. § 1292.16(f) or § 1292.17(d).  The 30-day deadline for a request for reconsideration in 8 C.F.R. § 1292.13(e), § 1292.16(f), and § 1292.17(d) is otherwise mandatory and not subject to equitable tolling.

(2)  A request for reconsideration made pursuant to 8 C.F.R. § 1292.13(e), § 1292.16(f), or § 1292.17(d) must demonstrate an error of fact or law in the previous decision.

(3)  The standard of review for administrative reviews conducted under 8 C.F.R. § 1292.18 is *de novo*.

(4)  Unless overruled by subsequent precedent or superseded by statute, regulation, or binding federal court decision, prior precedent decisions of the Board of Immigration Appeals remain binding in recognition and accreditation proceedings after January 18, 2017, including consideration of requests for reconsideration pursuant to 8 C.F.R. §§ 1292.13(e), 1292.16(f), or 1292.17(d) and administrative reviews conducted under 8 C.F.R. § 1292.18.

(5)  In addition to establishing the requirements for partial accreditation, an organization seeking full accreditation for an individual pursuant to 8 C.F.R. § 1292.12(a)(6) must establish that the individual possesses "skills essential for effective litigation."  Such skills include, at a minimum, "the ability to advocate a client's position at a hearing before an Immigration Judge by presenting documentary evidence and questioning witnesses, to present oral arguments before the Board, and to prepare motions and briefs for consideration by an Immigration Judge and/or [the] Board." *Matter of EAC, Inc.*, 24 I&N Dec. 556 (BIA 2008), followed.

McHENRY, Director:

The Office of Policy, through the Office of Legal Access Programs (OLAP), currently administers the Executive Office for Immigration Review's (EOIR's) recognition and accreditation program (R&A Program). On October 16, 2019, OLAP approved the application of Bay Area Legal Services, Inc. (Applicant) for recognition under 8 C.F.R. § 1292.11.  It also approved a request to extend recognition of the Applicant's principal office to various extension offices under 8 C.F.R. § 1292.15.

Applicant also submitted a request for full accreditation for Carlos Betancourt under 8 C.F.R. § 1292.12. On October 16, 2019, OLAP disapproved the request for full accreditation for Mr. Betancourt but approved the application for partial accreditation for him. On December 16, 2019, OLAP received a request for reconsideration of the disapproval of the application for full accreditation for Mr. Betancourt pursuant to 8 C.F.R. § 1292.13(e). On February 19, 2020, OLAP denied the request for reconsideration.

On February 21, 2020, I provided notification to Applicant that I would review the denial of the reconsideration request on my own initiative pursuant to 8 C.F.R. § 1292.18(a)(2). In that notification, I further specified the following issues to be reviewed:

> (1) Is the 30-day deadline for a request for reconsideration in 8 C.F.R. § 1292.13(e) (and in § 1292.16(f) and § 1292.17(d)) subject to equitable tolling? If so, what circumstances may warrant such tolling?

> (2) What is the appropriate legal standard for evaluating a request for reconsideration pursuant to 8 C.F.R. § 1292.13(e) (or § 1292.16(f) or § 1292.17(d))?

> (3) What is the appropriate standard of review for an administrative review conducted under 8 C.F.R. § 1292.18?

> (4) Are prior precedent decisions of the Board of Immigration Appeals (the Board) in recognition and accreditation (R&A) cases binding on consideration of requests for reconsideration pursuant to 8 C.F.R. §§ 1292.13(e), 1292.16(f), or 1292.17(d) and on administrative reviews conducted under 8 C.F.R. § 1292.18?

Pursuant to 8 C.F.R. § 1292.18(b), I also notified Applicant that it could submit additional filings, including a brief, on these issues and that it could submit any additional evidence related to the denial of the request for reconsideration. Any additional filings by Applicant were due by March 13, 2020. I further invited interested members of the public to file *amicus curiae* briefs on the aforementioned issues.[1]

---

[1] As further discussed herein, the regulatory transfer of responsibility for the R&A Program from the Board to OLAP in 2017 left open a number of questions related to R&A proceedings, including whether appearances by *amicus curiae* are permissible in such proceedings. When the Board oversaw responsibility for the R&A Program, its regulation allowing for appearances by *amicus curiae* on a case-by-case basis allowed for such appearances in R&A cases. 8 C.F.R. § 1292.1(d). After the transfer, however, the regulations governing the R&A Program do not expressly allow for appearances by *amicus curiae* in proceedings adjudicating applications under that program. *See id.* §§ 1292.11-1292.20. Although EOIR policy is clear that *amicus curiae* may not engage in legal advocacy on behalf of an individual in open court, Policy Memorandum 20-05, *Legal*

Applicant did not file any additional materials or a brief. One organization filed an *amicus curiae* brief.

For the reasons set forth below, I affirm OLAP's denial of the request for reconsideration.[2]

## I.  BACKGROUND

"The purpose of the [R&A Program] is to provide competent and affordable immigration legal services to persons of limited means through reputable nonprofit organizations." *Matter of St. Francis Cabrini Immigration Law Center*, 26 I&N Dec. 445, 446 (BIA 2014). Through the R&A Program, EOIR permits qualified non-attorneys to represent aliens before the Department of Homeland Security (DHS), the immigration courts, and the Board of Immigration Appeals (the Board). Organizations recognized by EOIR may "provide representation through accredited representatives who appear on behalf of clients before the Immigration Courts, the Board, and DHS, or DHS alone." 8 C.F.R. § 1292.11(a). EOIR "may approve accreditation of an eligible individual as a representative of a recognized organization for either full or partial accreditation." *Id.* § 1292.12(a). "An individual who receives full accreditation may represent clients before the Immigration Courts, the Board, and DHS. An individual who receives partial accreditation may represent clients only before DHS." *Id.* An organization applying for accreditation for an individual must specify whether it seeks partial or full accreditation for that individual. *Id.* In addition to the requirements for partial accreditation, *id.* §§ 1292.12(a)(1)-(6), an organization seeking full accreditation "must establish that the individual also possesses skills essential for effective litigation." *Id.* § 1292.12(a)(6).

---

*Advocacy by Non-Representatives in Immigration Court* (Nov. 21, 2019) (PM 20-05), an administrative review under 8 C.F.R. § 1292.18 presents a different situation. *Cf. Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985), *aff'd*, 782 F.2d 1033 (3d Cir.), *cert. denied*, 476 U.S. 1141 (1986) ("At the trial level, where issues of fact as well as law predominate, the aid of *amicus curiae* may be less appropriate than at the appellate level where such participation has become standard procedure."); *Sierra Club v. FEMA*, 2007 WL 3472851, *1 (S.D. Tex. Nov. 14, 2007) ("An *amicus* may be useful at the appellate level but not in the district court."). As there is no indication that the transfer of oversight of the R&A Program through the 2016 rulemaking was intended to prohibit *amicus curiae* briefing at the review stage of R&A proceedings—as analogous to the Board's appellate authority—I find that the Director has the authority in an administrative review conducted under 8 C.F.R. § 1292.18 to invite briefing from *amicus curiae* on a case-by-case basis if the public interest will be served.

[2]  Pursuant to 8 C.F.R. § 1292.18(d), I also direct that this decision be published as precedent.

The Department of Justice has maintained a formal R&A Program since at least the mid-1970s. *See* Representation and Appearance Before Immigration and Naturalization Appeals, 40 Fed. Reg. 23,271 (May 29, 1975). Until 2017, oversight of the Service and Board of Immigration R&A Program within EOIR lay with the Board, and the Board occasionally published decisions in R&A proceedings to provide guidance for those seeking recognition or accreditation. *See, e.g.*, *Matter of American Paralegal Academy, Inc.*, 19 I&N Dec. 386 (BIA 1986) (interpreting the phrase "nominal charges" for purposes of recognition under then-8 C.F.R. § 292.2(a)).

In 2015, EOIR proposed several changes to the R&A Program, including the transfer of responsibility for it from the Board to OLAP. *See* Recognition of Organizations and Accreditation of Non-Attorney Representatives, 80 Fed. Reg. 59,514 (Oct. 1, 2015). The rule effectuating those changes was finalized on December 19, 2016, and became effective on January 18, 2017. *See* Recognition of Organizations and Accreditation of Non-Attorney Representatives, 81 Fed. Reg. 92,346 (Dec. 19, 2016). The final rule contained multiple changes from the proposed rule, including the addition of a reconsideration process and a process for further administrative review by the Director. *Id.* at 92,357. Pursuant to the final rule, disapprovals of recognition or accreditation requests, disapprovals of requests for renewal of recognition or accreditation, and terminations of recognition or accreditation on particular bases are each subject to one request for reconsideration filed by an applicant within 30 days of the relevant decision. 8 C.F.R. §§ 1292.13(e), 1292.16(f), and 1292.17(d).[3] The Director has discretionary authority to review a denial of a request for reconsideration in these three circumstances. *Id.* § 1292.18(a).[4]

As discussed further below, the changes brought about by that rule raised several procedural questions that were unanswered by the rule itself. Some of those questions have been addressed through subsequent rulemakings.

---

[3] The regulations do not provide for an organization's ability to request reconsideration when its request to extend recognition to any office or location where the organization offers services is denied. *See* 8 C.F.R. § 1292.15.

[4] As discussed, *infra*, the Assistant Director for Policy may, as a matter of discretion, extend the 30-day deadline for a reconsideration request of the disapproval of a recognition or accreditation request, but not the deadline for reconsideration requests of disapprovals of requests for renewal of recognition or accreditation or of terminations of recognition or accreditation on particular bases. Otherwise, the three 30-day deadlines contain nearly identical regulatory language, serve identical functions, and are subject to the same form of administrative review. Accordingly, I find no reason to interpret the three provisions differently—*i.e.*, 8 C.F.R. §§ 1292.13(e), 1292.16(f), and 1292.17(d)—or to distinguish the standards applicable to all of them, except as noted herein.

*See, e.g.*, Board of Immigration Appeals: Affirmance Without Opinion, Referral for Panel Review, and Publication of Decisions as Precedents, 84 Fed. Reg. 31,463, 31,469 (July 2, 2019) (adding language to 8 C.F.R. § 1292.18 to make clear that decisions in R&A proceedings may still be designated as precedential and that R&A cases may still be referred to the Attorney General for review even after the transfer of responsibility for the R&A Program from the Board to OLAP).[5] Other questions remain open, particularly involving the reconsideration and administrative review processes added in the final rule. As Applicant's case presents several of these questions, the instant adjudication provides an appropriate opportunity to fill in some of the gaps left by the 2016 rulemaking and to provide guidance for future adjudications in R&A proceedings.

## II. ISSUES

Applicant's request for reconsideration was subject to a 30-day deadline and appears to have been untimely filed. Therefore, the first question raised is whether there is any basis to extend that deadline and to consider Applicant's request notwithstanding its untimeliness. Additionally, although OLAP denied the request as untimely, it denied the request on the merits in the alternative. Consequently, Applicant's case also raises the question of what such a request must demonstrate in order to warrant consideration on its merits. As OLAP's decision was subject to administrative review, the case further presents the question of what standard should govern such reviews. Finally, the merits of Applicant's request appear to be controlled by a prior Board precedent. Thus, the question of the continued applicability of that precedent is also at issue in Applicant's case. Each of these issues is addressed in turn below.

### A. Untimely Requests for Reconsideration under 8 C.F.R. § 1292.13(e), § 1292.16(f), or § 1292.17(d)

A request for reconsideration pursuant to 8 C.F.R. §§ 1292.13(e), 1292.16(f), or 1292.17(d) must be filed within 30 days of the relevant decision. The Assistant Director for Policy or the Director of OLAP as her delegate may, as a matter of discretion, extend the deadline for a request for reconsideration of the disapproval of a recognition or accreditation request.

---

[5]   In 2019, OLAP and responsibility for the R&A Program were transferred within EOIR from the Office of the Director to the Office of Policy through the promulgation of an interim final rule. *See* Organization of the Executive Office for Immigration Review, 84 Fed. Reg. 44,537 (Aug. 26, 2019). As a change in internal agency organization, the 2019 interim final rule did not address any standards for these procedures in the R&A Program.

*See* 8 C.F.R. § 1292.13(a) ("The Assistant Director for Policy (or the Assistant Director for Policy's delegate) may, in the exercise of discretion, extend the deadlines provided in this section [*i.e.*, 8 C.F.R. § 1292.13]."). No similar regulatory authority exists, however, for reconsideration requests for disapprovals of requests for renewal of recognition or accreditation or for terminations of recognition or accreditation on particular bases.[6] *See id.* §§ 1292.16, 1292.17.

The 30-day filing deadline for a request for reconsideration appears to be a traditional claim-processing rule, one that "promote[s] the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Indeed, filing deadlines are "quintessential claim-processing rules." *Id.*

Some claim-processing rules may be subject to equitable tolling, which tolls, or pauses, a relevant deadline for a person (or entity) who has diligently pursued his rights but nevertheless failed to file something timely due to an extraordinary circumstance; however, not all claim-processing rules are subject to equitable tolling. *Compare Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019) (Fed. R. Civ. P. 23(f) is a claim-processing rule but is not amenable to equitable tolling), *and Eberhart v. United States*, 546 U.S. 12, 19 (2005) (Fed. R. Crim. P. 33 is a claim-processing rule, but inflexible), *with Attipoe v. Barr*, 945 F.3d 76, 77 (2d Cir. 2019) (the Board's 30-day deadline for filing an appeal is a claim-processing rule that is subject to equitable tolling); *see also Huerta v. Gonzales*, 443 F.3d 753, 756 (10th Cir. 2006) (the Board's 30-day deadline for filing an appeal is a claim-processing rule but is nevertheless mandatory); *Liadov v. Mukasey*, 518 F.3d 1003, 1008 n.4 (8th Cir. 2008) (agreeing with *Huerta* that the Board's filing deadline is nonjurisdictional but nevertheless mandatory). The understanding of filing deadlines as nonjurisdictional claim-processing rules is also not dispositive as to whether those deadlines are subject to extension for any reason, such as equitable tolling, because filing-deadline claim-processing rules may be enforced as mandatory. *See Gonzalez v. Thaler*, 565 U.S. 134, 146 (2012) ("But calling a rule nonjurisdictional does not mean that it is not mandatory . . . ."); *cf. Kontrick v. Ryan*, 540 U.S. 443, 456 (2004) (noting that a filing deadline categorized as a nonjurisdictional claim processing rule may nevertheless be "inflexible" or "unalterable").

The 30-day filing deadline is purely a creature of regulation, as there is no statutory requirement for reconsideration in R&A proceedings. Thus, there is no evidence of any statutory intent to provide authority to extend that

---

[6]   The Assistant Director for Policy or her delegate does have the authority to extend the deadline for filing a renewal request or to accept an untimely-filed renewal request, 8 C.F.R. § 1292.16(b)(3), but that authority does not extend to requests for reconsideration of the disapproval of renewal requests.

deadline. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) ("Because the doctrine effectively extends an otherwise discrete limitations period set by Congress, whether equitable tolling is available is fundamentally a question of statutory intent."). The regulation itself also provides no authority for an equitable deadline extension and no authority for an extension at all, except as provided in 8 C.F.R. § 1292.13(a) for a request for reconsideration of the disapproval of a recognition or accreditation request. There is also no presumption that equitable tolling should apply to reconsideration requests in R&A proceedings. *See Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145, 158 (2013) ("We have never applied [a rebuttable presumption that equitable tolling applies to suits against the United States] to an agency's internal appeal deadline . . . ."). Finally, equitable tolling is a remedy founded in equity, and EOIR does not possess inherent, non-statutory, free-floating equitable authority. *See, e.g.*, *Matter of Hernandez-Puente*, 20 I&N Dec. 335 (1991) (the Board and immigration judges are without authority to apply equitable estoppel against now-DHS to preclude it from taking a lawful course of action it is authorized to take by statute or regulation).

Consequently, in the absence of any statutory, regulatory, or equitable authority, there is no basis to apply equitable tolling to filing deadlines in R&A proceedings. Accordingly, although the Assistant Director for Policy may, as a matter of discretion, extend the deadline for a request for reconsideration of the disapproval of a recognition or accreditation request pursuant to 8 C.F.R. § 1292.13(a), the deadline for a request for reconsideration is otherwise mandatory. No other regulation authorizes an extension of the 30-day deadline in 8 C.F.R. §§ 1292.13(e), 1292.16(f), or 1292.17(d), and equitable tolling cannot be invoked to extend the deadline.

### B. Requests for Reconsideration Pursuant to 8 C.F.R. § 1292.13(e), § 1292.16(f), or § 1292.17(d)

The regulations are silent on what, if anything, an applicant must demonstrate on a request for reconsideration under either 8 C.F.R. § 1292.13(e), § 1292.16(f), or § 1292.17(d). The rule establishing the availability of reconsideration requests, however, noted that the procedures were designed to allow affected organizations an opportunity to "point to an error in the determination." 81 Fed. Reg. at 92,357.[7]

---

[7] Somewhat confusingly, the final rule implies that deficiencies leading to an adverse determination by OLAP could also be corrected through a request for reconsideration, 81 Fed. Reg. at 92,357 ("Nevertheless, the Department realizes that adverse determinations are likely to occur and that organizations may have the ability to correct any deficiencies

Although the specific label "request [or motion] for reconsideration" is not used in all types of adjudications, many adjudicatory systems have some mechanism for the reassessment of a prior decision by the same decision-maker, though there may be limits on the types of decisions subject to reconsideration and the amount of time in which such a request must be filed. Many, if not most, of these mechanisms employ some variation of a basic standard—identification of an error of fact or law in the prior decision. For example, a motion to reconsider a Board or an immigration judge decision requires the specification of an error of fact or law. 8 C.F.R. §§ 1003.2(b)(1), 1003.23(b)(2); *Matter of O-S-G-*, 24 I&N Dec. 56, 56-57 (BIA 2006). Other administrative agencies utilize a similar standard. *See, e.g.*, 38 C.F.R. § 20.1001(a) (reconsideration of a decision by the Board of Veterans Appeals may be accorded upon allegation of obvious error of fact or law). Various types of reconsideration procedures in federal court proceedings also utilize a similar standard, though the procedural names and specific formulations vary. *Cf.* Fed. R. App. P. 40(a)(2) ("[A petition for panel rehearing] must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended . . . ."); *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) ("The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.").

Consistent with the language and apparent intent of the 2016 rulemaking, there is no indication that the reconsideration procedure established in 8 C.F.R. § 1292.13(e), § 1292.16(f), or § 1292.17(d) was intended to deviate from the well-established standard that such requests must point to an error in the underlying determination, such as an error of fact or law, nor is there any basis to conclude that the reconsideration procedure was intended to be subject to some other novel, unstated adjudicatory parameter. Accordingly, I hold that a request for reconsideration under 8 C.F.R. § 1292.13(e),

---

that led to the adverse determination or otherwise point to an error in the determination."), even though the rule already contained *other* procedures designed to address any such deficiencies, *id.* ("The final rule adopts the provisions of the proposed rule that afford an applicant an opportunity to be heard before the issuance of a determination on an initial or renewal application for recognition and accreditation or a determination on administrative termination based on deficiencies regarding the requirements for recognition or accreditation or reporting, recordkeeping, and posting."). Moreover, most, if not all, purported deficiencies to be corrected would be identified by "point[ing] to an error in the determination*." Id.* Accordingly, the language in the rulemaking does not set out an additional standard for a request for reconsideration beyond pointing out an error in the prior determination, which includes an error of either fact or law (or both).

§ 1292.16(f), or § 1292.17(d) must point to an error of fact or law (or both) in the underlying determination in order to be grantable.

### C.  The Standard of Review for an Administrative Review Conducted Under 8 C.F.R. § 1292.18

The possibility of administrative review by the Director was added to the final rule in response to "concerns that OLAP would be the sole decision-maker regarding recognition and accreditation and that another entity should be able to review OLAP's decisions."  81 Fed. Reg. at 92,357. The rulemaking did not offer a standard for such review, however.[8]

A request for administrative review may allege "factual or legal errors," indicating that administrative review encompasses both factual and legal determinations.  8 C.F.R. § 1292.18(a)(1).  Consequently, the standard of review should be appropriate for both types of determinations.

There is no universal standard for administrative reviews in agency proceedings, and assessing similar administrative immigration-related adjudications shows a mix of approaches to reviewing factual and legal determinations.   For example, the Board reviews factual findings by immigration judges for clear error and reviews questions of law, discretion, and judgment *de novo*.  8 C.F.R. §§ 1003.1(d)(3)(i), (ii).  For appeals from DHS proceedings, however, the Board reviews all issues *de novo*.  *Id.* § 1003.1(d)(3)(iii).  In conducting an administrative review of an ALJ's decision in certain proceedings under 8.U.S.C. § 1324a or 1324c, *see* 28 C.F.R. § 68.54, the CAHO reviews all issues *de novo*.  *Maka v. INS*, 904 F.2d 1351, 1356 (9th Cir. 1990); *United States v. Crescent City Meat Company, Inc.*, 11 OCAHO no. 1217, 7 (CAHO 2014).  The DHS Administrative Appeals Office (AAO) reviews cases *de novo*, including questions of law, policy, fact, and discretion.  *Matter of Simeio Solutions, LLC*, 26 I&N Dec. 542 n.1 (AAO 2015); *see also* Agency Information Collection Activities; Revision of a Currently Approved Collection:  Notice

---

[8]   The rule appears modeled, in part, on the rule for Chief Administrative Hearing Officer (CAHO) review of an administrative law judge's (ALJ's) decision in certain immigration-related proceedings under 8 U.S.C. §§ 1324a and 1324c.  *See* 28 C.F.R. § 68.54.  Both rules provide for discretionary administrative review within 10 days of the relevant decision, allow for the reviewer to conduct a review on his or her own initiative, and require the reviewer to state the issues to be reviewed for a self-initiated review.  *Compare id.* § 68.54(a) *with* 8 C.F.R. § 1292.18(a).  As discussed, *infra*, the CAHO reviews an ALJ's decision in proceedings under 8 U.S.C. §§ 1324a and 1324c *de novo*, though there is a statutory basis for applying that standard.  *See* 5 U.S.C. § 557(b).  Nevertheless, to the extent that the provisions of CAHO review under 28 C.F.R. § 68.54 may inform Director review under 8 C.F.R. § 1292.18, those provisions support a *de novo* standard of review.

of Appeal or Motion, 84 Fed. Reg. 66,924, 66,926 (Dec. 6, 2019) ("The AAO may review questions of law, policy, fact, and discretion de novo.").[9]

Adjudications in R&A proceedings are largely, if not entirely, based on paper filings or other documentary evidence. *See, e.g.*, 8 C.F.R. 1292.13(a). Thus, both factual and legal determinations are based on the documents presented. Notably, although the Board distinguishes standards of review for questions of fact and questions of law in appeals from immigration judge decisions, which usually follow a hearing, it retains one standard of review for both questions of law and questions of fact in appeals from DHS proceedings, which are largely based on papers and interviews. *Compare id.* §§ 1003.1(d)(3)(i), (ii), *with id.* § 1003.1(d)(3)(iii); *see also* Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54,878, 54,891 (Aug. 26, 2002) ("The comments on de novo review have raised an issue of the scope of review of factual determinations by officers of the [DHS] in decisions under review by the Board. Review of decisions by the district director and other [DHS] officers do not have the benefit of a full record of proceedings or, except in rare cases, a transcript of hearings before an independent adjudicating officer. Rather these decisions are made on applications and interviews, and other information available to the Service. In light of this difference, the Department has clarified the language of the final rule to retain de novo review of Service officer decisions . . . ."). Document-based adjudications by the AAO also use one standard of review for both questions of law and questions of fact. *Matter of Simeio Solutions*, 26 I&N Dec. 542, 542 n.1.

In R&A proceedings, the administrative review of a denial of reconsideration is much closer to Board review of a DHS decision or an AAO review due to the document-based nature of the underlying record than it is to Board review of an immigration judge decision.[10] Moreover, the regulations do not indicate any deference owed to the Assistant Director for Policy or her delegate regarding her reconsideration decision during an administrative review, and that lack of deference is consistent with a *de novo* standard of review. Similarly, the ability of the Director to request additional information on review, 8 C.F.R. § 1292.18(b), also suggests a *de novo* standard is appropriate. *Cf. Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 74 (1st Cir. 2001) ("Accordingly, when the district court reviewed the magistrate judge's order setting aside entry of default and default judgment,

---

[9] The AAO has recently proposed changing its standard of review for questions of discretion to an abuse of discretion. Fed. Reg. at 66,926.

[10] To be sure, CAHO review of an ALJ's decision is, arguably, analogous to Board review of an immigration judge's decision. Nevertheless, administrative review by the CAHO also points to the conclusion that review under 8 C.F.R. § 1292.18 is *de novo. See supra*, note 8.

it was clearly entitled to take evidence and make a *de novo* assessment as to the latter."). Overall, the balance of persuasive authority tips in favor of applying a *de novo* standard to administrative reviews of denials of reconsideration requests in R&A proceedings. Consequently, I hold that administrative reviews of reconsideration denials conducted under 8 C.F.R. § 1292.18 should utilize a *de novo* standard of review.

## D. Precedent Decisions of the Board in R&A Proceedings

The Board issued at least eleven precedential decisions in R&A proceedings between 1986 and 2014. The transfer of responsibility for the R&A Program from the Board to OLAP in 2017 left the applicability of those Board precedents to future R&A proceedings unclear because existing regulatory language on Board precedents points in two different directions. On one hand, "decisions of the Board . . . are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States." 8 C.F.R. § 1003.1(g)(1). As adjudicators in R&A proceedings are neither officers or employees of DHS nor immigration judges, this provision implies that Board precedents are not binding on adjudicators in R&A proceedings. On the other hand, Board precedents "serve as precedents in all proceedings involving the same issue or issues" unless modified or overruled by the Board or the Attorney General. *Id.* § 1003.1(g)(2). This provision is not limited to a specific type of proceeding—*e.g.*, removal proceedings—and suggests that Board precedents do remain binding in R&A proceedings.

The question of the continued value or applicability of Board precedent in R&A proceedings appears to have been overlooked in the crafting of the 2016 rulemaking, but there is no indication that the transfer of oversight of the R&A Program was intended to abrogate all existing Board precedents. To the contrary, many Board precedents were intended to be incorporated into the revised R&A Program regulations. *See, e.g.*, 80 Fed. Reg. at 59,520 ("The intent of the proposed rule is to follow the Board's precedential decisions in *Matter of EAC, Inc.*, 24 I&N Dec. 563 (BIA 2008), and *Matter of Central California Legal Services, Inc.*, 26 I&N Dec. 105 (BIA 2013), which specified the knowledge and experience sufficient to warrant accreditation." (footnotes omitted)). Although a rulemaking may certainly supersede a prior adjudication to the contrary and the 2016 rulemaking does incorporate some prior Board precedents into the regulations in part 1292, that rulemaking does not contain any blanket disavowal of the continuing viability of all prior Board precedents in R&A proceedings. In the absence of a clear and unmistakable repudiation of prior Board precedents in R&A proceedings in the 2016 rulemaking, particularly since such precedents have

provided useful guidance to organizations and the R&A Program for nearly 35 years, I hold that relevant Board precedents, unless overruled or superseded, continue to serve as precedents in R&A proceedings involving similar issues, consistent with 8 C.F.R. § 1003.1(g)(2). In other words, unless overruled by subsequent precedent or superseded by statute, regulation, or binding federal court decision, prior precedent decisions of the Board in R&A proceedings remain precedential and binding in R&A proceedings conducted after January 18, 2017, including consideration of requests for reconsideration pursuant to 8 C.F.R. §§ 1292.13(e), 1292.16(f), or 1292.17(d) and administrative reviews conducted under 8 C.F.R. § 1292.18.

## III. APPLICANT'S CASE

As discussed *supra*, Applicant's request for reconsideration to OLAP must point to an error of either fact or law, and I review OLAP's reconsideration denial *de novo*.

Applicant did not identify an error of fact in its reconsideration request. Rather, it tacitly asserted an error of law, namely that the evidence of Mr. Betancourt's experience demonstrated "skills essential for effective litigation," which warranted his full accreditation under 8 C.F.R. § 1292.13(a)(6). Thus, Applicant's request for reconsideration did sufficiently allege an error of law. Nevertheless, it was appropriately denied by OLAP as both untimely and meritless.

Applicant submitted a request for full accreditation for Mr. Betancourt under 8 C.F.R. § 1292.12. On October 16, 2019, OLAP disapproved the request for full accreditation for Mr. Betancourt but approved the application for partial accreditation for him. On December 16, 2019, OLAP received a request for reconsideration of that disapproval pursuant to 8 C.F.R. § 1292.13(e). On February 19, 2020, OLAP denied the request for reconsideration.

OLAP first denied the request for reconsideration as untimely because it was filed more than 30 days after the disapproval of the application for full accreditation. OLAP did not extend the deadline for filing such a request pursuant to 8 C.F.R. § 1292.13(a), and as discussed, *supra*, the deadline in 8 C.F.R. § 1292.13(e) is not subject to equitable tolling. Therefore, there is no basis for an extension of that deadline. Moreover, Applicant has not disputed that its request for reconsideration was untimely, nor has it requested any extension or waiver of that deadline. Accordingly, I agree with OLAP and affirm its decision that Applicant's request for reconsideration should be denied because it was untimely.

OLAP also denied Applicant's request for reconsideration on the merits. In doing so, it noted the record contained no evidence that Mr. Betancourt had assisted on any recent cases before EOIR or had any recent training, education, or experience related to trial and appellate advocacy. OLAP Dec. at 1 ("There is no indication in the record that Mr. Betancourt has assisted on any recent cases pending before EOIR or that he has any recent training, education, or experience related to trial and appellate advocacy."). Full accreditation requires evidence that an individual "possesses skills essential for effective litigation." 8 C.F.R. § 1292.12(a)(6). These skills include "the ability to advocate a client's position at a hearing before an Immigration Judge by presenting documentary evidence and questioning witnesses, to present oral arguments before the Board, and to prepare motions and briefs for consideration by an Immigration Judge and/or [the] Board." *Matter of EAC*, *Inc.*, 24 I&N Dec. 556, 560 n.1 (BIA 2008). "Consequently, evidence of advocacy skills, as well as evidence of a broad knowledge of immigration law, should be presented where full accreditation is sought." *Id.*

Applicant submitted twelve documents in its initial application specifically purporting to demonstrate that Mr. Betancourt possesses skills essential for effective litigation, and it re-submitted them with its request for reconsideration. These documents reflect briefs or motions prepared by Mr. Betancourt between 2002 and 2016 when he served as an accredited representative for different recognized organizations.[11]

The Board's decision in *Matter of EAC* identifies at least three skills to be demonstrated in order to obtain full accreditation: "the ability to advocate a client's position at a hearing before an Immigration Judge by presenting documentary evidence and questioning witnesses, to present oral arguments before the Board, and to prepare motions and briefs for consideration by an Immigration Judge and/or [the] Board."[12] *Id.* Although the record contains evidence that Mr. Betancourt has prepared motions and briefs for consideration by an immigration judge,[13] it is largely devoid of evidence of

---

[11] The Board had previously granted accreditation to Mr. Betancourt from 1981 to 1984, 2000 to 2003, 2005 to 2013, and 2014 to 2017 in connection with his work for four separate recognized organizations.

[12] The Board's use of "including" to introduce this list of examples of these skills indicates that the list is non-exhaustive. *See Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (". . . the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.").

[13] Of the twelve documents submitted, two were prepared for U.S. Citizenship and Immigration Services rather than an immigration judge, and many of the others are unsigned or lack indicia showing that they were filed with the Board or an immigration court. Nevertheless, the record as a whole contains sufficient evidence that Mr. Betancourt has prepared motions and briefs for consideration by EOIR adjudicators.

his oral advocacy or oral case presentation skills before adjudicators, which are skills "essential for effective litigation," and it is completely devoid of evidence of any recent training or experience that would demonstrate such skills. *Cf. Matter of Central California Legal Services, Inc.*, 26 I&N Dec. 105 (BIA 2013) (stating that recent completion of a training course may be evidence of broad knowledge of immigration law and candidates for renewal of accreditation should have updated training reflecting that they have kept current in the law). At most, the record reflects that Mr. Betancourt may have argued an asylum case before an immigration judge in 2016 or early 2017, though the extent of his advocacy in that case based on the record is ambiguous.[14] Nevertheless, it is clear that Mr. Betancourt has not "assisted on any recent cases pending before EOIR or that he has any recent training, education, or experience related to trial and appellate advocacy." OLAP Dec. at 1. Accordingly, upon a *de novo* review of the record, I agree with OLAP that Applicant did not put forth sufficient evidence to demonstrate that Mr. Betancourt possesses "skills effective for essential litigation" warranting full accreditation. Thus, even if Applicant's request for reconsideration were timely, it would have been appropriately subject to denial on the merits.

**ORDER:** The denial of the request for reconsideration is affirmed.

---

[14] The documentation submitted shows that Mr. Betancourt filed a memorandum of law in support of a respondent's asylum application in May 2016 and that the application was apparently granted by an immigration judge approximately eight months later. The record contains no assertion, however, that Mr. Betancourt presented evidence, questioned witnesses, or otherwise represented the respondent at any hearing on that application.